GEORGE A. GINDELE *et al.*

*v.*

JOHN CORRIGAN.

*Filed at Ottawa October 31, 1889.*

1. ADMIRALTY—ATTACHMENT OF VESSELS — *State and Federal jurisdiction—essentials to jurisdiction—in rem or in personam.* Where the admiralty jurisdiction of the United States attaches, it does so to the exclusion of the jurisdiction of the State courts, and a State can not confer jurisdiction upon its courts in such cases.

2. It is essential to a suit *in rem* in admiralty, against a vessel, that an actual seizure be made of it, and it be subjected primarily to the satisfaction of the judgment. Without such seizure the court acquires no jurisdiction of the vessel.

3. The State may, by statute, authorize the attachment of the property of a debtor or tort feasor, as a security for the satisfaction of the judgment to be recovered, and in such case the proceeding is *in personam,* and not *in rem.* The object of the attachment, in such case, is to secure a lien upon the property seized for the payment of the judgment, and not for the condemnation of the property itself.

4. Where the owner of a vessel procures its release from the attachment by giving his personal bond, with sureties, the suit will thereafter be a proceeding *in personam.* The plaintiff may then amend the record so as to make the bondsmen parties defendant. The statute authorizing such proceedings in the State courts is not in conflict with the constitution or laws of the United States.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

The following statement by the Appellate Court is substantially accurate:

This is a proceeding instituted by John Corrigan, appellee, against the steam canal boat "Nunnemacher," pursuant to chapter 12 of the Revised Statutes of Illinois, commonly known as the "Water-craft act."

The cause of action alleged in the petition arose from a collision of the said steam canal boat "Nunnemacher," of above fifty tons burden, owned by the Illinois and Michigan Canal Company, a corporation organized and doing business in the State of Illinois, under and in pursuance of the laws thereof, of which corporation the said George A. Gindele was an officer, and manager of its business, and a shareholder therein, and the canal boat "Midnight," then belonging to John Corrigan, the appellee, and being of above five tons burden,—the steam canal boat "Nunnemacher" and the canal boat "Midnight" being, at the time of such collision, domestic vessels and water-craft, and both engaged in commerce wholly within the borders of the State of Illinois, and the home port of both being within this State, and enrolled and licensed pursuant to law.

In the night time of the 8th of May, 1886, the canal boat "Midnight," in charge of William Peck as master, being towed by mules, was on its way from the city of Chicago to Peru, in La Salle county, on the waters of the Illinois and Michigan canal, and within said State of Illinois, laden with a cargo of hard coal screenings. Near Lemont, in Will county, in said

State of Illinois, she was overtaken *en route* and run into by the steam canal boat "Nunnemacher," broken open in keel and side, sunk, and rendered a total loss, without fault on the part of the said canal boat "Midnight," her officers or crew, and through the negligence and want of care of the officers and persons in charge of the canal boat "Nunnemacher," as is alleged in said petition.

On the 14th day of May, 1886, Corrigan, the appellee, sued out of the circuit court of Will county a writ of attachment, under the provisions of said Water-craft act, against the steam canal boat "Nunnemacher," alleging in his petition that the owners of the said steam canal boat were unknown. The writ was issued on that day, pursuant to the provisions of said act, and the "Nunnemacher" was seized under the writ by the sheriff of Will county. Five or six days thereafter, John A. Gindele, claiming an interest as part owner in said steam canal boat, bonded and released the boat from such seizure under sections 15 and 17 of said chapter 12 of the Revised Statutes of Illinois, —being the Water-craft act,—his sureties being John Angus and George P. Adams, the appellants, and thereupon a writ of restitution was issued, and returned by said sheriff of Will county executed, pursuant to the 17th section of the aforementioned act, and said steam canal boat was thereupon discharged and released from the lien of the attachment, as provided in said Attachment act. Some time after such restitution, George A. Gindele, one of the appellants, entered his appearance in said attachment proceedings, filed his answer thereto, claiming to be interested in the steam canal boat as part owner thereof, and as principal in the bond given and filed in said court to obtain the release of said boat from such attachment seizure, therein admitting the collision at the time, place, and with the results charged in said petition for said attachment, but denying that it was caused by the negligence or want of care or skill on the part of those in charge of the steam canal boat "Nunnemacher," or that the said canal boat or her owners

were liable therefor. This answer was subsequently withdrawn by leave of court, and appellants were allowed to enter a motion to dismiss the proceedings for want of jurisdiction in the trial court, and thereupon, on leave obtained, Corrigan, appellee, amended his petition, which being re-filed, said motion to dismiss for want of jurisdiction was again interposed, which motion being overruled, replication was filed to the answer, and the cause submitted to a jury for trial, who, after hearing the evidence, returned a verdict for the appellee, for $1000. A motion was made for a new trial, and overruled, judgment entered on the verdict, and an appeal was prosecuted by defendants below to the Appellate Court, where the judgment was affirmed, and they prosecute this further appeal.

Mr. C. E. KREMER, and Mr. C. W. BROWN, for the appellants:

The collision in this case is a maritime tort, and one within the jurisdiction of a court of admiralty. *Ex parte Boyer,* 109 U. S. 629.

As to the question of admiralty jurisdiction, and its effect on State statutes, see "*The Moses Taylor,*" 4 Wall. 411; "*The Hine*" v. *Trevor,* 4 id. 555; "*The Belfast,*" 7 id. 624; "*The Lottawana,*" 21 id. 558; *Williamson* v. *Hogan,* 46 Ill. 504; *Tug "Montauk,"* 47 id. 335; *Langdon* v. *Wilcox,* 107 id. 606.

Messrs. DUNCAN, O'CONNOR & GILBERT, and Messrs. HALEY & O'DONNELL, for the appellee:

The State court had the jurisdiction to try the case. *Johnson* v. *Elevator Co.* 119 U. S. 388; *Steamboat "General Buel,"* 18 Ohio St. 521; "*The Moses Taylor,*" 4 Wall. 427; *Steamboat "Josephine,"* 39 N. Y. 19.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

This was a proceeding by attachment, under chapter 12 of the Revised Statutes of this State, by John Corrigan, against the steam canal boat "Nunnemacher," for an injury to the

canal boat "Midnight," upon the waters of the Illinois and Michigan canal, through the alleged gross negligence of those in charge of the defendant boat.

It is first urged, that the circuit court of Will county had no jurisdiction of the subject matter. It is contended that the collision, if produced by negligence, as alleged, was a maritime tort, and therefore within the exclusive jurisdiction of the courts of admiralty, by virtue of the act of Congress of 1789. Where the admiralty jurisdiction of the United States court attaches, it undoubtedly does so to the exclusion of the jurisdiction of the State court, (Cohen's Admiralty Law, 1,) and a State can not confer jurisdiction upon its courts in such cases. (Ibid; *Stewart* v. *Potomac Ferry Co.* 12 Fed. Rep. 296; "*The Hine*" v. *Trevor*, 4 Wall. 555.) It is, however, essential to a suit *in rem*, in admiralty, against the vessel, that an actual seizure be made of the vessel, and it be subjected primarily to the satisfaction of the judgment. Without such seizure the court acquires no jurisdiction of the vessel. Cohen's Admiralty Law, 22, 23; *Brennan* v. *Steam Tug "Anna P. Darr*," 4 Fed. Rep. 459; *Miller* v. *United States*, 11 Wall. 294.

In *Loy* v. *Steamboat "Aubury*," 28 Ill. 412, which was trespass, for assault and battery by the mate upon the plaintiff while a passenger, brought under the act of the legislature of this State of February 16, 1857, this court held that the action would lie,—citing *Steamboat "Champion"* v. *Jansen*, 16 Ohio, 91, and *Canal Boat "Huron"* v. *Simmons*, 11 id. 458. In *Schooner "Norway"* v. *Jensen*, 52 Ill. 373, it was held that the act of 1857, giving a summary remedy in certain cases against steamboats and other water-craft, was not confined in its operation to vessels navigating the rivers within or bordering upon this State, but embraced those employed upon any of the navigable waters of the State, and that a sailor injured on board a vessel through the negligence of the owner, might proceed, under that act, by attachment and seizure of the vessel. The second section of the act authorized suits against the

owner or owners or master of the craft, or against the craft itself, and section 4 provided for the seizure of the craft. In *Tugboat "E. P. Dorr"* v. *Waldron,* 62 Ill. 221, which was an attachment for supplies, this court held that the proceeding had no resemblance to a libel in a court of admiralty, but was of the same character as an ordinary attachment, requiring notice to be given of the pendency of the suit, and that by it no prior liens were interfered with,—citing *Germain* v. *Steam Tug "Indiana,"* 11 Ill. 535.

The action in this case was for a tort, which, in the language of the Appellate Court, may be defined "to be an injury or wrong committed, with or without force, to the person or property of another, and such injury may arise by either the nonfeasance, malfeasance or misfeasance of the wrongdoer." The common law affords a remedy for torts, although they may be committed upon a navigable stream; but in such case the remedy is not exclusively *in rem,* or such as pertains to a court of admiralty. The common law remedy is by an action *in personam,*—that is, against the wrongdoer in person,—and not primarily or solely against his property. The State may, by statute, authorize the attachment of the property of the debtor or tort feasor, as a security for the satisfaction of the judgment to be recovered, and in such case the proceeding is *in personam* and not *in rem.* The object of the attachment in such case is to secure a lien upon the property seized for the payment of the judgment, and not for the condemnation of the property attached.

In the case of *"The Moses Taylor,"* 4 Wall. 411, the court say: "The case before us is not within the saving clause of the 9th section of the act of 1789. That clause saves only to suitors 'the right of a common law remedy where the common law is competent to give it.' It is not a remedy in the common law courts which is saved, but a common law remedy. A proceeding *in rem,* as used in the admiralty court, is not a remedy afforded by the common law. It is a proceeding under the

civil law. Where used in the common law courts, it is given by the statute."

In "*The Hine*" v. *Trevor*, 4 Wall. 555, the same court say: "If the facts of the case before us, in this case, constitute a case of admiralty cognizance, then the remedy, by a direct proceeding against the vessel, belonged to the Federal courts, alone, and was excluded from the State tribunals. * * * It is said that the statute of Iowa may be fairly construed as coming within the clause of the 9th section of the act of 1789, which saves to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it. But the remedy pursued in the Iowa courts, in the case before us, is in no sense a common law remedy. It is a remedy partaking of all essential features of an admiralty proceeding *in rem.* * * * While the proceeding differs thus from the common law remedy, it is also essentially different from what are in the West called 'suits by attachment,' and in some of the older States 'foreign attachments.' In these cases there is a suit against the person of defendant by name, and because of inability to serve process on him, on account of nonresidence, or for some other reason mentioned in the various statutes allowing attachments to issue, the suit is commenced by a writ directing the proper officer to attach sufficient property of the defendant to answer any judgment which may be rendered against him. This proceeding may be had against an owner or part owner of a vessel, and his interest thus subjected to sale in a common law court of the State. Such action may be also maintained in the common law courts by such remedy as the common law gives." See, also, "*The Belfast*," 7 Wall. 624, and "*The Lottawana*," 21 id. 558.

In *Johnson* v. *Chicago and Pacific Elevator Co.* 119 U. S. 388, that court again says: "Liens under State statutes, in suits *in personam*, are of every day occurrence, and may extend to the lien on vessels, where the proceedings to enforce them do not amount to admiralty proceedings *in rem*, or otherwise con-

flict with the constitution of the United States. There is no more valid objection to the attachment proceedings to enforce the lien in a suit *in personam*, by holding the vessel by *mense* process to be subjected to execution on the personal judgment when recovered, than there is in subjecting her to seizure on the execution. Both are incidents of a common law remedy, which a court of common law is competent to give."

Such has been the uniform construction placed upon the act of Congress referred to. In the case at bar, after the seizure of the boat, the personal bond of appellants, as part owners and sureties, was substituted, and the vessel was thereby released and discharged from the seizure, and thereafter the case proceeded to final judgment as a proceeding *in personam*. The suit was originally entitled *John Corrigan* v. *The Propeller "Nunnemacher," and the unknown owner or owners of said propeller "Nunnemacher."* After the trial, the plaintiff, by leave of the court, amended the title of the case so as to make the bondsmen, George A. Gindele, George T. Adams and John Andrus, the defendants, and thereupon judgment was rendered *in personam* against said bondsmen, as it is provided shall be done by the 21st section of chapter 12 of the Revised Statutes of this State, known as the "Water-craft act."

In *Langdon* v. *Wilcox*, 107 Ill. 606, this court said: "A proceeding under the Water-craft act is essentially, in many of its features, like a proceeding *in rem* in admiralty, though differing from the latter, it is believed, sufficiently to avoid any conflict with the constitution of the United States, which gives to the Federal court exclusive jurisdiction in admiralty." By the 15th section of said act, where the vessel has been seized under the attachment provided for in the act, the owner, or other person interested, may release the same, and have a return of the property attached, upon entering into bond, "conditioned that the obligors will pay all money adjudged to be due such (the) claimants, with costs of suit." Section 21 of the act provides, that when the vessel is seized on *mesne* pro-

cess, and is released upon bond given by the owner or the persons interested therein, and filed in the court in which the proceeding is pending, the bond shall stand in the place of the vessel, and judgment or decree shall be rendered against the principal and sureties of the bond, providing that in no case shall the judgment exceed the penalty of the bond, and expressly providing, that "the subsequent proceedings, after the bond is filed, shall be the same as now provided by law in personal actions in the courts of record in this State." It is manifest that appellants have voluntarily submitted themselves to the jurisdiction of the State court; and it is clear, that after having done so, by filing the bond provided by the statute for the release of the vessel, the proceeding was no longer *in rem,* but necessarily *in personam,* and no other than a personal judgment could have been rendered. This being so, the proceedings here have no similitude to an admiralty proceeding *in rem,* and we are of opinion that the circuit court had jurisdiction to render the judgment, and also that the motion to dismiss the suit, entered after the filing of such bond, was properly overruled.

The point is also made that there was no proof that the plaintiff was the owner of the canal boat injured by the collision. This is a question of fact, which is settled by the verdict of the jury and judgment of the Appellate Court, and can not be considered here.

Finding no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*