NELLIE WEBB *v.* BROWN & WILLIAMSON TOBACCO COMPANY

(No. 8821)

Submitted February 21, 1939. Decided March 14, 1939.

116

*Poffenbarger & Poffenbarger,* for plaintiff in error.
*Bailey & Shannon,* for defendant in error.

Fox, PRESIDENT:

The Brown & Williamson Tobacco Company, a non-resident corporation, proceeded against by suggestion and attachment of its assets in Wyoming County, complains of a judgment against it for the sum of $2,000.00, recovered by Nellie Webb, in an action at law, in the circuit court of said county, on the 26th day of April, 1938, based upon the verdict of a jury.

The Tobacco Company manufactures a flat plug tobacco under the trade name or brand of "Blood Hound". Prior to the 30th of May, 1937, it made a sale of a quantity of this product to the Red Jacket Coal Corporation, which retailed the same to its customers. About the date last mentioned, the coal corporation sold a plug of this tobacco to the son of Nellie Webb, the plaintiff below, and he permitted his mother to take a chew from the plug so purchased by him. It appears from the evidence that that part of the plug from which the chew was taken contained a dead worm or moth from which extended nu-

merous fine stickers or stingers, hard and penetrating in their nature, and each about one-eighth of an inch in length. When the plaintiff placed the chew in her mouth, these stingers, in large number, penetrated the lining and tissues of the mouth, causing great inconvenience and some pain, which continued for some time thereafter. The plaintiff made eight or nine trips to a local physician, within a few weeks following this occurrence, and an examination of her mouth by a physician for the defendant, on December 18, 1937, revealed a number of reddened areas in the roof of the mouth and left cheek which were elevated and indurated, but neither inflamed nor ulcerated. No permanent injury is alleged or proven.

The plaintiff below rests her case on evidence showing the manufacture of the tobacco in question by the defendant; the sale thereof by a retailer to her son; her attempted use of the same; her own testimony and that of her husband, son and a physician as to the inconvenience and suffering occasioned thereby; and upon the further contention that the rule of *res ipsa loquitur* applies, and that from these facts the jury had the right to infer negligence on the part of the manufacturer. The testimony offered by the defendant was that of the superintendent of its manufacturing plant, which is to the effect that reasonable precautions were taken to prevent any foreign substance from entering or remaining in all tobacco manufactured by it, but that it was possible that the worm or moth found in the tobacco could have entered the plug after its manufacture; and the testimony of two physicians, who examined the plaintiff shortly before and at the time of the trial, touching her condition at that time. From all the testimony offered in the case, four facts are clearly established: (1) The manufacture and sale of the tobacco by the defendant and its use by the plaintiff; (2) the existence of the foreign substance in the tobacco and the suffering of some pain and inconvenience resulting therefrom; (3) that in the manufacture of the tobacco of the character here involved, care was exercised to prevent foreign substances from enter-

ing or remaining in the manufactured plug; and (4) that it was possible that the worm or moth found in the tobacco could have entered the same after the manufacturing process had ended.

The proposition that the manufacturer, packer or bottler of food products is liable to a consumer thereof for injury caused by unwholesomeness or unfitness of such product, although purchased from a retailer, seems to be well established by the authorities. 26 C. J. 785, sec. 93; 11 R. C. L. 1122, sec. 28; *Liggett & Myers Tobacco Company* v. *Rankin,* 246 Ky. 65, 54 S. W. (2d) 612; *Norfolk Coca-Cola Bottling Works* v. *Krausse,* 162 Va. 107, 173 S. E. 497. In *Liggett & Myers Tobacco Company* v. *Cannon,* 132 Tenn. 419, 178 S. W. 1009, L. R. A. 1916A, 940, Ann. Cas. 1917A, 179, it was held that tobacco did not come within this rule, but more recent cases, containing, as we think, the better reasoning, hold that although chewing tobacco is not a food, it is a product especially prepared for human use or consumption, and that lack of care in manufacturing the same furnishes good cause for action on the part of a consumer who may purchase the same from a retailer. *Pillars* v. *R. J. Reynolds Tobacco Company,* 117 Miss. 490, 78 So. 365; *Corum* v. *R. J. Reynolds Tobacco Company,* 205 N. C. 213, 171 S. E. 78; *Delk* v. *Liggett & Myers Tobacco Company,* 180 S. C. 436, 186 S. E. 383; *Liggett & Myers Tobacco Company* v. *Rankin, supra; Liggett & Myers Tobacco Company* v. *Wallace* (Tex.), 69 S. W. (2d) 857.

The liability of a manufacturer rests upon the omission of some legal duty. "In every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes to him; (2) A negligent breach of that duty; (3) Injuries received thereby, resulting proximately from the breach of that duty." 2 Jones on Evidence, p. 57, Sec. 184. See also *Delk* v. *Liggett & Myers Tobacco Company, supra; Cashwell* v. *Fayetteville Pepsi-Cola Bottling*

*Company,* 174 N. C. 324, 93 S. E. 901. Whether or not the defendant has, in fact, been negligent is, where the evidence is in conflict either as regards direct statements or inferences which may be drawn from proven facts and circumstances, a jury question. *Cashwell* v. *Fayetteville Pepsi-Cola Bottling Company, supra; Harper* v. *Bulluck,* 198 N. C. 448, 152 S. E. 405; *Broadway* v. *Grimes,* 204 N. C. 623, 169 S. E. 194; *Cordell* v. *Macon Coca-Cola Bottling Company,* 56 Ga. App. 117, 192 S. E. 228.

The defendant in error relies strongly upon the doctrine of *res ipsa loquitur.* Referring again to Jones on Evidence and to the same section cited above, and referring to what should be shown to establish negligence, it is there stated:

"This may be done, either by direct testimony of witnesses who know the facts, or by direct proof of indirect, but correlated, facts from which the duty owing him, the injury done him, the negligence of defendant, and its proximate causal connection with the injury may be reasonably inferred. When such method of establishing liability is resorted to, negligence is never inferred from the mere fact of the injury; but the act which produced it, and defendant's negligence, and the injury must all be shown, and the nexus between them must appear in the relationship of cause and effect. This indirect method of arriving at the negligence of defendant is generally expressed by the maxim, *'res ipsa loquitur'.* Literally translated, it means 'the thing speaks for itself,' and is merely a short way of saying that the circumstances attendant upon the accident are themselves of such a character as to justify a jury in inferring negligence as the cause of the injury. It in no wise modifies the general doctrine that negligence will not be presumed."

Here we have a case where, without the evidence introduced in behalf of the defendant in the court below, the doctrine of *res ipsa loquitur* would apply; but that doctrine does nothing more than warrant certain inferences from established facts, and testimony tending to show a different state of facts from those out of which

the inference grew changes the situation. In this case, testimony of the superintendent of the manufacturing plant tends to establish the fact that precautions were taken to prevent the presence of foreign substances in the manufactured product; and there was also testimony to show that the existence of foreign substances, such as were found in the tobacco used by the consumer, could have originated after the manufacturing process had ended, and, therefore, the jury would not have been warranted, by inference alone, in holding the manufacturer liable under the doctrine of *res ipsa loquitur*. But the fact remains that, notwithstanding the care exercised by the manufacturer, and the possibility that the injury complained of might have resulted from some development not traceable to its acts, a worm or a moth did get into the tobacco plug, and from this fact resulting injury was sustained by the consumer. We are not disposed to hold the manufacturer liable on the theory that it was a guarantor of the purity of its product; therefore, unless we can say, as a matter of law, that the testimony of the superintendent conclusively overcame the inferences of negligence arising from the fact that the manufacturer had complete control of the preparation of the article, then it follows that whether or not there was negligence on the part of the manufacturer is a question for the jury. The jury had the right to believe that the system used by the manufacturer was not sufficient to prevent the presence of a foreign substance in the manufactured product involved in this case. Realizing the difficulties surrounding our decision, we hold that the question of negligence was one for jury determination, and that on the question of liability of the manufacturer, its verdict cannot be disturbed. This ruling is, we think, sustained by the great weight of authority. The cases have been cited on other points of this opinion and their repetition is not considered necessary.

The plaintiff in error complains of the refusal of the trial court to give its Instructions Nos. 1 and 5. Instruction No. 1 was intended to advise the jury that sections 1 and 2 of Article 7, Chapter 16 of the Code, relating to

food, drinks, confectioneries or condiments, did not apply to tobacco; and that if the plaintiff was entitled to recover it was upon some principle of the common law, as distinguished from the violation of a statutory duty. We think the same purpose was substantially served by Instruction No. 2, given on its behalf, and that being true, it was not error to refuse Instruction No. 1. Furthermore, whether tobacco is a food is not, under our holding, material.

Instruction No. 5, refused, referred in general terms to the rule of *res ipsa loquitur*, without defining the same, and then told the jury that if the defendant used and exercised due care and diligence in the manufacture of the tobacco in question, the plaintiff could not recover. Instruction No. 3, given at the instance of the Tobacco Company, in our opinion, not only told the jury that the exercise of reasonable care and diligence on the part of the manufacturer, "to provide against presence therein of any foreign article or substance", would relieve it of liability, but also that the manufacturer was not a guarantor of the absolute purity of its product. Instruction No. 5 is open to the objection that it called upon the jury to appraise the rule of *res ipsa loquitur,* a rule which men trained in the law have some difficulty in defining, and its rejection on that ground can well be defended; and in view of the fact that other instructions given in the case present very clearly the unobjectionable part of the instruction, we uphold the action of the court below in refusing the same.

The plaintiff in error also complains of the amount of the verdict. Notwithstanding the finding of the jury that the manufacturer in this case was liable, there is neither allegation nor testimony on which the allowance of punitive damages can be justified. The undisputed evidence is that the defendant below attempted to exercise care in the manufacture of its product, and while the jury must, necessarily, have found that such care was not sufficient to reasonably guard against what happened in this case, that finding, under the circumstances, did not

warrant the allowance of anything beyond compensatory damages. The court is unanimous in the view that the verdict is probably excessive; but a majority is of the opinion that, in view of the well known rule that the verdict of a jury will not be disturbed except where it plainly appears to have resulted from mistake, partiality, passion, prejudice or lack of due consideration, the excess finding is not such as would warrant a reversal of the judgment and a setting aside of the verdict on that ground. *Thomas* v. *Lupis*, 87 W. Va. 772, 106 S. E. 78.

The judgment of the circuit court is therefore affirmed.

*Affirmed.*

KENNA, JUDGE, concurring:

The question here involved is a matter of first impression in West Virginia, and a review of the authorities discloses that there are two leading theories forming the basis of liability of a packer or manufacturer of what is to be classified as foodstuff. Part of the difficulty arises from the fact that there is no direct contractual relationship between the manufacturer or packer and the ultimate consumer of foodstuffs purchased in the original package from a retailer. We are not dealing with foodstuffs the original package of which is opened by the distributor or middleman.

A number of the decided cases rest the liability upon negligence, compensation for the result of which is recoverable in a tort action. I am impressed that this theory, coupled with the extent to which mass production has comparatively recently expanded, bases both the plaintiff's case and the defendant's proof upon what may be termed an inference or a presumption. As to direct proof of negligence on the part of the packer in the preparation of the specific article which caused injury to the plaintiff, it would seem obvious that, in other than exceptional instances, there is no means by which plaintiff could obtain that proof. Likewise, it would seem practically impossible for the packer to produce proof

that the degree of care required had been exercised as to the specific article from which plaintiff received his injury. Of course, the packer could show his customary and habitual method which might or might not, in the mind of a jury, meet the burden of proof arising by the application of the rule *res ipsa loquitur* under the plaintiff's showing. It strikes me that with negligence the basis of recovery, both the charge and the defense, although theoretically either might rest upon a specific showing concerning the definite article causing the injury, as a matter of fact would rest upon the legal fiction termed a shifting presumption. The law creates the presumption, the upshot of which is the rule *res ipsa loquitur,* and the jury would be privileged to draw the inference that the packer's general showing of care was sufficient to cover the specific article causing plaintiff's injury. Yet the showing of general care would have little weight if the jury gave credence to the plaintiff's testimony as to the deleterious content of the specific package.

Applying the negligence rule seems to rest the verdict almost entirely upon whether the jury accords credence to plaintiff's testimony or does not. Should it do so, it is not consistent that the verdict should be for the defendant, but should it fail to do so, obviously, the finding could not be for the plaintiff.

As opposed to the application of the negligence theory there are a number of what I consider well-reasoned cases favoring the theory that the packer or manufacturer impliedly warrants to the consumer the wholesomeness of, and absence of harmful substances from, the article prepared by him. This rests upon the theory that the ultimate consumer enters into an implied contract with the packer induced by his assurances that the article he has for sale is fit for human consumption. This dispenses with the application of the rule of *res ipsa loquitur,* and rests the respective duties and obligations where the application of presumptions under the negligence theory rests them. Stating it differently, in either case, if the jury gives credence to the testimony produced by the

plaintiff, a verdict for the plaintiff is inevitable. The consequences are equivalent, but to my mind, the negligence rule encounters the unnecessary application of legal fiction, which is to be avoided where the ends of justice may be arrived at without it.

Of course, it is unnecessary to comment upon the necessity for requiring a very high degree of care in the mass production and distribution of foodstuffs. It is unfortunate that there is no statutory law in West Virginia fixing the legal responsibility and reconciling, if possible, the divergent interests involved. Many of the manufacturers and packers, whose products are consumed in this state, are non-residents, and the care they exercise in their plants is susceptible of very little inquiry by the citizens of this state. At the same time, it must be realized that the circumstances surrounding food consumption, in most instances, can be shown only by the consumer. Between these points of view, I am impressed that what may be called a sound public policy which will work out best for the general welfare and at the same time will not inflict additional hardships upon the packer or manufacturer is to hold that he is an implied warrantor of the wholesomeness of the articles he prepares for the purpose of distribution to the ultimate consumer and his household through middlemen or distributors.

Under the rule definitely established in this state, a recovery may be had for breach of an implied warranty accompanying the sale of a chattel in either trespass on the case or assumpsit. *Schaffner* v. *National Supply Co.,* 80 W. Va. 111, pt. 1 Syl., 92 S. E. 580. See also Cooley's Blackstone (4th Ed.), 976, *et seq.,* and *Shippen* v. *Bowen,* 122 U. S. 575, 7 S. Ct. 1283, 30 L. Ed. 1172, which clarify the basic reason for the rule. Examine also, Code, 56-4-24, which, among other provisions, vests plaintiff with the right, by amendment, to alter the form, though not the cause, of action.

Whether the implied warranty could be held to extend to the plaintiff or would be confined to the purchaser could well rest upon whether the action were in contract

or in tort. The Court's holding makes it unnecessary to determine the question of whether a right to recover based upon contract would entitle plaintiff to sue or whether the absence of privity would preclude such an action.

I cannot follow the accuracy of the statement in the Court's opinion that the jury had the right to believe that the *system* used by the manufacturer was not sufficient to prevent the presence of a foreign substance in the article involved. That is exactly what I do not think the jury had a right to find. The entirety of the proof relating to the system used by the packer was adduced by defendant's witnesses, and was sufficient to establish an extremely high degree of care. As might be expected, there was no direct contradiction, defendant's plant being located outside of West Virginia and for all practical purposes no information being available to the plaintiff. Yet the article that caused plaintiff's injury, if plaintiff's testimony is given credence, passed through a plant run under the exacting system testified to and emerged with a deleterious substance causing plaintiff's trouble contained in it. It is conceivable, but not likely, that both versions are substantially accurate. I do not believe proof not relating to the specified article which caused plaintiff's injury, but simply establishing a system under which a high degree of care was exercised should defeat recovery when, in spite of such a method having been habitually used, an injury due to the unwholesomeness of a foodstuff, or its equivalent, results. It seems that the effect of the court's opinion, based upon what it is said the jury could regard as an insufficient system, inferentially would require the jury to disregard the defendant's proof in order that a recovery be justified. On the other hand, in order to justify a verdict for the defendant, the plaintiff's proof would have to be disregarded. I think that approximately the same result can be reached by a rule which bases a recovery simply upon the credence to be given the plaintiff's proof by applying the doctrine of implied warranty. In both instances, recovery

rests upon the identical jury determination, i. e., crediting plaintiff's proof. The main difference is that under the negligence doctrine, a much more complicated legal problem is confronted than under the implied warranty doctrine. The latter, in most instances, would rest entirely upon whether the jury felt itself justified in treating the plaintiff's proof as worthy of credence; that is exactly where the negligence theory rests.

It is hardly useful to cite the decided cases, but the following annotations will be found of great assistance to those wishing to review this highly interesting question. 4 A. L. R. 1559; 17 A. L. R. 672; 39 A. L. R. 992; 47 A. L. R. 148; 63 A. L. R. 340; 105 A. L. R. 1039, 1502; 111 A. L. R. 1239.

Judge Hatcher is in accord with this memorandum.