IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

**FILED**

**May 14, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 23-569

_____

CAMDEN-CLARK MEMORIAL HOSPITAL CORPORATION;
CAMDEN-CLARK HEALTH SERVICES, INC.;
WEST VIRGINIA UNITED HEALTH SYSTEM, INC.
d/b/a WEST VIRGINIA UNIVERSITY HEALTH SYSTEM; and
WEST VIRGINIA UNIVERSITY HOSPITALS, INC.,
Defendants Below, Petitioners,

v.

MARIETTA AREA HEALTHCARE, INC.;
MARIETTA MEMORIAL HOSPITAL; and
MARIETTA HEALTHCARE PHYSICIANS, INC.,
Plaintiffs Below, Respondents.

_____

Certified Questions from the
United States District Court for the Northern District of West Virginia
The Honorable John Preston Bailey, Judge
Civil Action No. 5:23-cv-131

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: January 29, 2025
Filed: May 14, 2025

Andrew B. Cooke, Esq.
Natalie B. Atkinson, Esq.
Thomas Combs & Spann, PLLC
Charleston, West Virginia
Attorneys for Petitioners

J. Zak Ritchie, Esq.
Michael B. Hissam, Esq.
Max C. Gottlieb, Esq.
Carl W. Shaffer, Esq.
Hissam Forman Donovan Ritchie PLLC
Charleston, West Virginia
Attorneys for Respondents

JUSTICE TRUMP delivered the Opinion of the Court.

JUSTICE BUNN concurs in part and dissents in part and reserves the right to file a separate opinion.

JUSTICE WALKER, deeming herself disqualified, did not participate in the decision of this case.

JUDGE JENNIFER F. BAILEY, sitting by temporary assignment.

JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.

JUDGE SEAN K. HAMMERS, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998); Syllabus Point 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017).'" Syllabus Point 1, *Fields v. Mellinger*, 244 W. Va. 126, 851 S.E.2d 789 (2020).

2.      A claim for negligent supervision in West Virginia requires proof of the traditional elements of negligence – duty, breach, causation, and damages – supplemented by the additional necessity of demonstrating a tortious act or omission by the employee whose conduct forms the basis of the claim.

3.      If an employer has a duty to supervise an employee, and the employer negligently fails in that duty, then the employer may be liable for the ensuing damage regardless of whether the employee's tortious conduct is negligent, reckless, or intentional.

i

TRUMP, Justice:

The United States District Court for the Northern District of West Virginia

("district court") certified the following questions to this Court:

(1)     Is a claim for negligent supervision against an employer viable under West Virginia common law[?]

(2)     If yes, what are the elements of the claim?

(3)     Can intentional or reckless torts committed by an employee form the basis for a claim for negligent supervision against the employer?

Upon careful review of the parties' briefs and oral arguments, relevant portions of the appendix record, and the applicable law, and for the reasons set forth below, we answer the certified questions as follows and return this matter to the district court for such further proceedings as that court may deem appropriate.

(1)     Is a claim for negligent supervision against an employer viable under West Virginia common law?

Answer: Yes.

(2)     If yes, what are the elements of the claim?

Answer:   A claim for negligent supervision in West Virginia requires proof of the traditional elements of negligence – duty, breach, causation, and damages – supplemented by the additional necessity of demonstrating a tortious act or omission by the employee whose conduct forms the basis of the claim.

(3)     Can intentional or reckless torts committed by an employee form the basis for a claim for negligent supervision against the employer?

Answer: Yes.

1

## I. FACTUAL AND PROCEDURAL HISTORY

As set forth in the district court's order of certification, there are three civil actions relevant to this case: (1) the initial *qui tam* action;[1] (2) the civil action in the Northern District of West Virginia (Civil Action No. 5:21-CV-25), referred to herein as *Marietta I*, that followed the voluntary dismissal of the *qui tam* action; and (3) the instant civil action in the Northern District of West Virginia styled *Marietta Area Healthcare, Inc., et al. v. Camden-Clark Memorial Hospital Corporation, et al.* (Civil Action No. 5:23-CV-131), referred to herein as *Marietta II*. As the action relevant to the certified questions presented is *Marietta II,* we summarize those facts as set forth in the district court's certification order and reference any other pertinent aspect of the other two actions.

*Marietta I* was an action filed by respondents herein, Marietta Area Healthcare, Inc., Marietta Memorial Hospital, and Marietta Healthcare Physicians, Inc. (collectively "Marietta") against Michael A. King, Dr. Michael D. Roberts, and later Todd Kruger, alleging malicious prosecution, tortious interference with business relationships and expectancies, abuse of process, and fraudulent legal process, claims arising out of the *qui tam* action initiated by King and Roberts against Marietta.[2] While *Marietta I* was still

---

[1] "A *qui tam* action is one in which a private plaintiff sues on behalf of the government under a statute that awards part of any penalty recovered to the plaintiff and the remainder to the government." *Hays v. Hoffman*, 325 F.3d 982, 986 n.1 (8th Cir. 2003).

[2] In *Marietta I*, Michael A. King, a former chief executive officer of Camden-Clark Memorial Hospital Corp. and/or Camden-Clark Health Services, Inc.; Dr. Michael D. Roberts, an area physician who was employed by and/or rendered professional services at Camden-Clark; and Todd Kruger, Camden-Clark's vice president and general counsel,

pending, Marietta filed the action giving rise to the certified questions now before this Court (*Marietta II*).[3] The pleadings in *Marietta II* allege that Camden-Clark Memorial Hospital Corporation, Camden-Clark Health Services, Inc., West Virginia University Hospitals, Inc., and West Virginia United Health System, Inc. (hereinafter collectively "petitioners" or "Camden-Clark") attempted to disadvantage Marietta economically by causing its agents and employees (i.e., King, Roberts, and Kruger) to initiate and pursue an allegedly spurious *qui tam* action against Marietta. Marietta seeks recovery based on petitioners' alleged role(s) in the pursuit and abuse of the allegedly fraudulent *qui tam* action. Relevant to the instant case, Marietta alleges that the actions complained of in *Marietta I* were undertaken with the knowledge and approval of Camden-Clark.

---

initiated and pursued a *qui tam* action against Marietta in federal court. The *qui tam* complaint alleged, *inter alia*, that Marietta engaged in continuing violations of the federal False Claims Act, 31 U.S.C. § 3729, by seeking and receiving healthcare reimbursements from federal healthcare programs in contravention of the Stark Laws, 42 U.S.C. § 1395nn, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, including paying certain physicians in excess of their fair market value in order to induce referrals.

       The *qui tam* action was stayed pursuant to 31 U.S.C. § 3730(b)(2) while the Department of Justice ("DOJ") investigated the claims. After nearly three years, the DOJ ultimately determined that it would not intervene in the case, and King and Roberts moved to dismiss the *qui tam* action. The district court granted the motion to dismiss and unsealed certain docket entries, including the complaint that formed the basis of the action.

       [3] The parties in *Marietta I* (the respondents herein and King, Roberts, and Kruger) ultimately settled that case, and the matter was closed by order entered May 18, 2023.

3

Marietta's Second Amended Complaint in *Marietta II* alleges eight causes of action against Camden-Clark: malicious prosecution, tortious interference with business relationships and expectancies, abuse of process, fraudulent legal process in violation of West Virginia Code § 61-5-27a, civil conspiracy, negligent supervision, aiding and abetting tortious conduct, and vicarious liability. Five of these claims repeat the causes of action asserted in *Marietta I* (malicious prosecution, tortious interference with business relationships and expectancies, abuse of process, fraudulent legal process, and civil conspiracy), while three claims are unique to this case: negligent supervision, aiding and abetting tortious conduct, and vicarious liability.

According to the record, on August 21, 2023, the petitioners filed a motion to dismiss *Marietta II* pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting, *inter alia*, that the Second Amended Complaint failed to state a claim upon which relief could be granted. By order entered September 18, 2023, the district court denied the petitioners' motion with regard to seven of the eight asserted claims. The court deferred ruling on the motion to dismiss the negligent supervision claim, opining that "the law with respect to negligent supervision remains unsettled in West Virginia[,]" and certified questions to this Court. This Court accepted the certified questions and placed this matter on the docket for argument under Rule 20 of the West Virginia Rules of Appellate Procedure.

## II. STANDARD OF REVIEW

The case before us presents questions of law certified by the federal district court. Insofar as the instant proceeding requires an analysis of the law, our review of such questions is plenary. "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998). Syllabus Point 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017)." Syl. Pt. 1, *Fields v. Mellinger*, 244 W. Va. 126, 851 S.E.2d 789 (2020).

## III. DISCUSSION

The questions certified to this Court by the district court seek clarification of West Virginia law regarding the tort of negligent supervision. We address each question in turn.

### A. Viability of Negligent Supervision Claim

The district court's order certifying these questions to this Court states that the parties agree that negligent supervision is a viable cause of action under West Virginia common law. We too agree that there is no dispute, and a review of our case law confirms that West Virginia's common law has long recognized a cause of action for a claim by a third party against an employer for the negligent supervision of its employee. *See, e.g.*, *Speedway LLC v. Jarrett*, 248 W. Va. 448, 889 S.E.2d 21 (2023); *W. Va. Reg. Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014); *Robertson v. LeMaster*, 171

5

W. Va. 607, 301 S.E.2d 563 (1983); *Keyser Canning Co. v. Klots Throwing Co.*, 94 W. Va. 346, 118 S.E. 521 (1923).

### *B. Elements of a Negligent Supervision Claim*

Turning now to the second certified question, we begin by considering the nature of a negligent supervision action under West Virginia's common law and note at the outset that a claim based upon negligent supervision, like any claim based in negligence, requires a showing of duty, breach, causation, and damages. *Jones v. Logan County Bd. of Educ.*, 247 W. Va. 463, 473, 881 S.E.2d 374, 383 (2022), *citing Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 118, 2 S.E.2d 898, 899 (1939). A claim for negligent supervision, grounded in this fundamental principle of tort law, recognizes that, in certain circumstances, an employer may owe a distinct duty of care to third parties based on the tortious actions of its employee.[4] The creation of a duty to supervise is a fact-dependent inquiry.

A negligent supervision claim, unlike a respondeat superior claim (based in agency), provides for direct liability of an employer for its negligence in supervising an

---

[4] A claim for negligent supervision against the employer requires that the employee must have committed a tortious act or omission that is a cause-in-fact of the plaintiff's injury. *See Grego v. Meijer, Inc.*, 187 F.Supp.2d 689, 694 (W.D. Ky. 2001) ("The tort of negligent supervision is a second tort that derives from a tort committed by the person negligently supervised."); *see also Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 53 (Iowa 1999) (A necessary element of a claim for negligent hiring, supervision, or retention is "an underlying tort or wrongful act committed by the employee.") (citation omitted).

employee who causes harm to a plaintiff.[5] As this Court has explained, in any negligence case, a plaintiff "must prove that the defendant owed the plaintiff some duty of care; that by some act or omission the defendant breached that duty; and that the act or omission proximately caused some injury to the plaintiff that is compensable by damages." *Hersch v. E-T Enters., Ltd. P'ship*, 232 W. Va. 305, 310, 752 S.E.2d 336, 341 (2013), *superseded by statute*, W. Va. Code § 55-7-12, *as stated in Tug Valley Pharmacy, LLC v. All Plaintiffs Below In Mingo Cty.*, 235 W. Va. 283, 291 n.12, 773 S.E.2d 627, 635 n.12 (2015). In other words, alleging that a defendant is negligent means that "the defendant owed some duty of care to another yet failed to abide by that duty." *Id*.

### *1. Duty to Supervise*

While we have not specifically spoken on the elements of negligent supervision, for a negligent supervision claim to succeed, the employer must have a duty to the plaintiff to supervise its employee. *See Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 18 (N.Y. App. Div. 2023) (noting that an employer's duty in the context of a negligent supervision claim "is only to act as a prudent and reasonable employer would under the circumstances."); *see also Aikens v. Debow*, 208 W. Va. 486, 490, 541 S.E.2d

---

[5] *See Murphy v. Army Distaff Found., Inc.*, 458 A.2d 61, 63 (D.C. 1983) (under negligent supervision theory, "the employer's duty to supervise is not merely to be judged by the concept of respondeat superior. Rather it is an allegation of direct negligence, and 'this duty extends even to activities which, . . . [sometimes] are outside the scope of employment.'") (quoting *International Distrib. Corp. v. American Dist. Telegraph Co.*, 569 F.2d 136, 139 (D.C. Cir. 1977)).

576, 580 (2000) ("The resolution of any question of tort liability must be premised upon fundamental concepts of the duty owed by the tortfeasor."). However, the extent to which an employer has a duty to a plaintiff to supervise its employee is fact-dependent and includes considerations "such as the work performed, the employees performing it, the size of the business, the type of work, and the employer's clientele, among others." *See Doe v. Coe*, 135 N.E.3d 1, 16 (Ill. 2019). Furthermore, for this duty to supervise to be imposed on the employer, the harm caused by the employee must be foreseeable. *See* Syl. Pt. 3, in part, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988) (recognizing that "a duty to use care" exists when it is foreseeable "that harm may result if it is not exercised.").[6] The question of whether the employer's duty to supervise the employee exists and extends to the plaintiff focuses on "a connection between the employer's knowledge of the employee's dangerous propensities and the harm caused." *Keller v. Koca*, 111 P.3d 445, 450 (Colo. 2005) *as modified on denial of reh'g* (May 16, 2005).[7]

---

[6] While we need not expound on our generally recognized limitations on foreseeability and duty, we note that this Court has acknowledged policy considerations and limits on foreseeability and duty that would also apply to negligent supervision claims. *See Robertson v. LeMaster*, 171 W. Va. 607, 612, 301 S.E.2d 563, 568 (1983) (quoting Syl. Pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E. 582 (1895) ("Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place, manner, or person.").

[7] Similarly, in overturning the lower court's grant of summary judgment on the plaintiff's negligent retention and supervision claim, the Superior Court of New Jersey noted the employee's extensive record of prior misconduct in the workplace that was similar to the conduct alleged by the plaintiff. *See Hoag v. Brown*, 935 A.2d 1218, 1231 (N.J. Super. Ct. App. Div. 2007) ("Given Sheppard's prior disciplinary history, . . . plaintiff's claim that DOC was negligent for retaining [and in supervising] Sheppard survives summary judgment.").

However, this Court has also rejected a plaintiff's "unadorned reasoning" that, as long as harm is foreseeable, there is a duty to prevent it. *See Stevens v. MTR Gaming Group, Inc.*, 237 W. Va. 531, 535, 788 S.E.2d 59, 63 (2016); *see also Miller v. Whitworth*, 193 W. Va. 262, 267, 455 S.E.2d 821, 826 (1995) (providing that while "foreseeability of risk is an important consideration when defining the scope of duty . . . it would be absurd to expect landlords to protect tenants against all crime since it is foreseeable anywhere in the United States.").

### 2. Breach, Causation, and Damages

A negligent supervision claim must also assert a breach of the duty to supervise, with the breach being the proximate cause of the damages or injury alleged by the plaintiff. *See* Syl. Pt. 3, *McCoy v. Cohen*, 149 W. Va. 197, 140 S.E.2d 427 (1965) ("Proximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence."). Simply, for a negligent supervision claim to succeed, there must be a nexus between the actions or omissions of the employer and the harm the employee was able to inflict on the plaintiff. *See Moore Charitable Found.*, 217 N.E.2d at 17-18; *Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233, 238 (Wis. 1998) ("With respect to a cause of action for negligent . . . supervision, we determine that the causal question is whether the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury."); *see also Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 280, 787 S.E.2d 546, 551 (2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. at

9

118, 2 S.E.2d at 899) (recognizing that a negligence claim requires a duty owed by the defendant to the plaintiff, the defendant's breach of that duty, and injuries "resulting proximately from the breach of that duty.").

In *Madden v. Aldrich*, 58 S.W.3d 342 (Ark. 2001), the Supreme Court of Arkansas considered a claim of negligent supervision, which is illustrative. In that case, the plaintiffs sued the attorney who employed another attorney who subjected the plaintiffs to an adoption scam. On the claim of negligent supervision, the Supreme Court of Arkansas found that the testimony adduced at trial constituted substantial evidence that the attorney-employer was negligent in her supervision of the attorney-employee and that the negligence of the attorney-employer was a proximate cause of the plaintiffs' damages.

> The evidence demonstrated that [the employer] knew, or in the exercise of ordinary care should have known, that [the employee] would act in a way that would subject third parties to an unreasonable risk of harm. It is of no consequence that [the employer] had no personal knowledge about [the employee's] misrepresentations to the [plaintiffs]. She was certainly put on notice by the prior complaints that [the employee] was not performing his duties according to the rules of professional conduct. At a minimum, she knew that [the employee] had taken money from clients for specific purposes and had not used the funds accordingly. She knew that ledgers kept by his secretary were not matching up with what clients were telling her they had paid [the employee]. Moreover, there was evidence that she knew that [the employee] had taken $4,000 from a woman for purposes of arranging an adoption, and that the woman was having difficulty getting in touch with [the employee] about the matter. There was thus substantial evidence that [the employer] was negligent in supervising [the employee].

*Madden*, 58 S.W.3d at 352-353.

10

## C. Intentional or Reckless Tort as Basis for Negligent Supervision Claim

The third certified question asks if an employee's intentional or reckless tort may form the basis of a negligent supervision claim, and we answer that question in the affirmative, provided that the claim meets all of the elements discussed above. For purposes of a negligent supervision claim, the action or omission of the employee is not limited to the single tort of negligence. In *C.C. v. Harrison County Board of Education*, 245 W. Va. 594, 618, 859 S.E.2d 762, 786 (2021) Justice Hutchison noted that

> [t]he term 'tort' embraces all civil wrongs for which damages may be recovered." Barry A. Lindahl, 1 Modern Tort Law: Liability and Litigation § 2:1 (2d ed. 2021). Tortious conduct is not limited to negligent acts alone. A 'tort' involves any form of injury or wrong inflicted upon the person or property of another 'by either the non-feasance, malfeasance, or misfeasance of the wrong-doer.'" *Gindele v. Corrigan*, 129 Ill. 582, 587, 22 N.E. 516, 517 (1889).

(Hutchison, J., concurring in part and dissenting in part) (footnote omitted).

This position has substantial support in this country's tort jurisprudence as evidenced by our survey of judicial rulings beyond West Virginia, which revealed that no jurisdiction has limited a claim of negligent supervision only to cases in which the employee's underlying conduct was negligent. For example, the Supreme Court of Vermont has held that "the tort of negligent supervision must include as an element *an underlying tort or wrongful act* committed by the employee." *Haverly v. Kaytec, Inc.*, 738 A.2d 86, 91 (Vt. 1999) (emphasis added). Similarly, the Supreme Court of Iowa found that "in every Iowa case where section 213 [of the *Restatement (Second) of Agency*] has been applied, the

employee who was negligently hired or supervised wrongfully inflicted injury on the plaintiff. *E.g.*, *Godar v. Edwards*, 588 N.W.2d 701, 703 (Iowa 1999) (employee sexually abused student); *D.R.R. v. English Enterprises, CATV*, 356 N.W.2d 580, 582 (Iowa App. 1984) (employee raped tenant of apartment complex)." *Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 53 (Iowa 1999). The same is true across the country. *See Pruitt v. Pavelin*, 685 P.2d 1347 (Ariz. Ct. App. 1984) (employee defrauded client); *Welsh Mfg. v. Pinkerton's*, 474 A.2d. 436 (R.I. 1984) (employee stole from client).

Similarly, a review of our own law regarding respondeat superior demonstrates that this Court has not limited an offending employee's conduct only to the tort of negligence in imputing liability to an employer. On the contrary, we have consistently found that the employee's conduct must be *tortious*, explaining:

> We stated the doctrine of *respondeat superior* this way in Syllabus Point 3 of *Musgrove v. Hickory Inn, Inc.,* 168 W.Va. 65, 281 S.E.2d 499 (1981): 'An agent or employee can be held personally liable for *his own torts* against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable.' *See also, Griffith v. George Transfer & Rigging, Inc.,* 157 W. Va. 316, 201 S.E.2d 281 (1973) ('The universally recognized rule is that an employer is liable to a third person for any injury to his person or property which results proximately from *tortious conduct of an employee* acting within the scope of his employment. The *negligent or tortious act* may be imputed to the employer if the act of the employee was done in accordance with the expressed or implied authority of the employer.'); Syllabus Points 3 (in part) and 4, *O'Dell v. Universal Credit Co.,* 118 W. Va. 678, 191 S.E. 568 (1937) ('The legal relationship of master and servant is commonly understood to arise when one person subordinately serves another, both consenting thereto. . . . The master is answerable to a stranger for the negligent act of a person employed

12

> by the [master or] master's authorized agent, if the act is within the scope of the person's employment.').

*Dunn v. Rockwell*, 225 W. Va. 43, 62, 689 S.E.2d 255, 274 (2009) (emphasis added). Thus, we agree with all other states and our own well developed tort law in now holding that "[i]f an employer has a duty to appropriately supervise an employee to prevent harm to others, and the employer negligently fails in that duty, then the employer may be liable for the ensuing damage regardless of the nature of the employee's conduct, be it negligent, reckless, or intentional." *C.C.*, 245 W. Va. at 618, 859 S.E.2d at 786 (Hutchinson, J., concurring in part and dissenting in part).[8]

---

[8] It is here that we must distinguish between the dicta in both *C.C.* and *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128, 538 S.E.2d 719 (2000) (per curiam) on the one hand, and the long-held tort principles of our jurisprudence on the other hand. In *Taylor*, both the circuit court and this Court were using the facts of that case in their respective discussions of the applicable law. The nurse in *Taylor* was charged with simple negligence, not an intentional tort, so there was no need for either court to discuss intentional torts, and neither did so. In fact, *Taylor* was a case based primarily on the separate theory of respondeat superior, not negligent supervision. The *Taylor* Court noted that, "[t]he appellant's purpose in bringing a negligent supervision claim is not clear to this Court. . . . Counsel for the hospital acknowledged that if the jury found that a negligent act of Nurse Grim caused the appellant's injury, the hospital would be liable under the doctrine of *respondeat superior*. . . . Because of the verdict in this case, we need not consider the viability of a negligent supervision claim in cases governed by the doctrine of *respondeat superior*." *Taylor*, 208 W. Va. at 134, 538 S.E.2d at 725.

Similarly, the language in *C.C.* relied on by the petitioners is dicta that this Court is not obligated to follow. Having affirmed the trial court's Rule 12(b)(6) dismissal of the negligent supervision claim on the ground that the plaintiff's complaint was factually deficient, this Court in *C.C.* did not need to go any farther. Our subsequent discussion of the theory of negligent supervision was merely dicta and "a sharp departure from the basic tenets of negligence[,]" as Judge Berger pointed out in *Merritt v. Casto*, No. 2:22-cv-00556, 2003 WL 2589679 at *7-8 (S.D.W. Va. Mar. 21, 2023). This Court would not make such a departure without adopting the new holding in a syllabus point. *See State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 42-43, 829 S.E.2d 35, 42-43 (2019) ("[W]e have made it clear that the language utilized in our syllabus points, rather than our dicta, is

We do not consider our answer in this case to be a departure from established principles of our negligence law. Rather, we regard our answer to the certified question to be an application of the established standard of reasonable care under comparable circumstances. Accordingly, we decline to deviate from our traditional common law of negligence in order to create an immunity for employers whose employees engage in intentional or reckless conduct when, under the particular facts and circumstances of a case, the employer knew or reasonably should have known that its failure to supervise its employee would result in the harm that occurred. *See Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985) (To prevail in an action for negligent supervision, "it is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.").

## IV.  CONCLUSION

For the reasons discussed above, we conclude that a claim of negligent supervision is viable under West Virginia common law; that the elements are as discussed in the body of this opinion; and that a claim against an employer for the negligent

controlling. As we have repeatedly stated, '. . . [n]ew points of law . . . will be articulated through syllabus points as required by our state constitution.'") (citations omitted).

14

supervision of its employee may arise from the negligent, reckless, or intentional conduct

of the employee if the elements of the claim, as discussed above, have been proven. [9]

Certified Questions Answered.

---

[9] Our review is limited exclusively to the questions certified by the district court. We make no determination regarding the merits of the negligent supervision claim alleged in Marietta's Second Amended Complaint.

15