IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 14-1332

_____

FILED

June 2, 2016

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WHEELING PARK COMMISSION,
Defendant Below, Petitioner

v.

JOSEPH DATTOLI AND KERRY DATTOLI, HIS WIFE,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Ohio County
The Honorable Ronald E. Wilson, Judge
Civil Action No. 09-C-274

REVERSED

_____

Submitted: January 20, 2016
Filed:  June 2, 2016

Thomas E. Buck, Esq.
Bruce M. Clark, Esq.
Bailey & Wyant PLLC
Wheeling, West Virginia
Attorneys for Petitioner

Jacob M. Robinson, Esq.
Brent E. Robinson, Esq.
Robinson Law Offices,
Wheeling, West Virginia

Ronald W. Zavolta, Esq.
Zavolta Law Offices
Wheeling, West Virginia
Attorneys for Respondents

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE DAVIS and JUSTICE WORKMAN dissent and reserve the right to file dissenting opinions.

SYLLABUS BY THE COURT

1.      "Upon a motion for [pre-verdict judgment as a matter of law], all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." Syl. pt. 5, *Wager v. Sine*, 157 W. Va. 391, 201 S.E.2d 260 (1973).

2.      "When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant." Syl. pt. 3, *Roberts v. Gale*, 149 W. Va. 166, 139 S.E.2d 272 (1964).

3.      "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. pt. 1, *Parsley v. Gen. Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981).

4.      "Liability of a person for injury to another cannot be predicated on negligence unless there has been on the part of the person sought to be charged some omission or act of commission in breach of duty to the person injured." Syl. pt. 6, *Morrison v. Roush*, 110 W. Va. 398, 158 S.E. 514 (1931).

i

5.     "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner, or person." Syl. pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E. 582 (1895).

6.     "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syl. pt. 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

7.     "In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning." Syl. pt. 1, *Tug Valley v. Mingo Cty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979).

8.     "[A] statute that is clear and unambiguous will be applied and not construed." Syl. pt. 1, in part, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

Benjamin, Justice:

Petitioner and defendant below, Wheeling Park Commission (the Commission"), appeals the Circuit Court of Ohio County's denial of its motion for a judgment as a matter of law in a negligence action brought against the Commission by the respondents and plaintiffs below, Joseph Dattoli and Kerry Dattoli. The Commission also appeals the circuit court's December 3, 2014, order that awarded the Dattolis a new trial limited to the issue of damages for Joseph Dattoli's past pain and suffering. After considering the parties' arguments, the applicable law, and the appendix in this case, this Court finds that the circuit court erred in denying the Commission's motion for judgment as a matter of law.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an incident which occurred on September 1, 2007, at Oglebay Park Resort and Conference Center ("the Park") in Ohio County. Joseph Dattoli and his wife, Kerry Dattoli, were attending activities at the Park when Mr. Dattoli leaned against a split rail fence on the park grounds. Prior to doing so, Mr. Dattoli glanced at the fence to ensure that the parts of the fence were attached. As Mr. Dattoli leaned against a post of the fence and put his hand on the top rail, the end of the top rail broke into several

---

[1] The Park Commission refers to its motion at the close of the evidence as a motion for a directed verdict. However, in Rule 50(a) of the West Virginia Rules of Civil Procedure, the term "directed verdict" has been replaced with the phrase "judgment as a matter of law." Therefore, in this opinion we refer to the Commission's motion as one for judgment as a matter of law.

pieces causing Mr. Dattoli to fall down a hill and injure his shoulder. Consequently, the Dattolis brought a negligence claim against the Commission which maintains the Park.

The Dattolis adduced evidence at trial that Mr. Dattoli suffered a rotator cuff tear that required surgical repair. There also was evidence that following surgery, Mr. Dattoli went through months of physical therapy and missed six months of work. Additional evidence was presented regarding the effect of Mr. Dattoli's injury on the respondents' marriage and finances.

Further, the Dattolis presented the testimony of the Commission's corporate designee, John Hargleroad, the Director of Operations at the Park since 1990. According to Mr. Hargleroad, the fence in question was installed at some point between the 1970s and the 1990s. In addition, Mr. Hargleroad testified that the Commission produced no records or documents in response to the Dattolis' request for repair and maintenance records regarding the fence. Additionally, in testifying regarding Defense Exhibit 17 which was several pieces of the broken fence, Mr. Hargleroad indicated it was his understanding that it was the piece of the fence that disengaged causing Mr. Dattoli's fall. Moreover, Mr. Hoagleroad testified that he understood that wood has a life expectancy. Finally, Mr. Hargleroad testified that the Park was in a better position to ensure that the fence was in a state of good repair than a guest of the Park.

At the close of the Dattolis' case, the Commission moved for judgment as a matter of law based on insufficient evidence of the Commission's duty with regard to maintenance of the fence and breach of that duty. The circuit court denied this motion, and the case was submitted to the jury. The Commission presented no witnesses in its case in chief. Subsequently, the jury returned a verdict in which it awarded the Dattolis $36,894.47 in past medical expenses and $19,000 in past lost wages. The jury awarded nothing for all other forms of damages including but not limited to past pain and suffering.

By order dated September 2, 2014, the circuit court entered judgment for the Dattolis based on the jury's verdict. Thereafter, the Dattolis filed a motion for a new trial arguing that the jury's verdict was insufficient. By order dated December 3, 2014, the circuit court granted the Dattolis a new trial only on the amount of damages for Mr. Dattoli's past pain and suffering. The Commission now challenges the circuit court's denial of its motion for judgment as a matter of law and the circuit court's order that granted the Dattolis a new trial only on the issue of damages.

## II.    STANDARD OF REVIEW

In this appeal, the Commission calls upon this Court to review the circuit court's denial of its pre-verdict motion for judgment as a matter of law pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure. This Court applies "a *de novo* standard of review to the . . . denial of a pre-verdict . . . motion for judgment as a matter

3

of law." *Gillingham v. Stephenson*, 209 W. Va. 741, 745, 551 S.E.2d 663, 667 (2001)." We also have indicated that a motion for judgment as a matter of law should be granted at the close of the evidence when, after considering the evidence in the light most favorable to the nonmovant, only one reasonable verdict is possible." *Waddy v. Riggleman*, 216 W. Va. 250, 255, 606 S.E.2d 222, 227 (2004), quoting *Yates v. University of West Virginia Bd. of Trs.*, 209 W. Va. 487, 493, 549 S.E.2d 681, 687 (2001). In addition, "[u]pon a motion for [pre-verdict judgment as a matter of law], all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." Syl. pt. 5, *Wager v. Sine*, 157 W. Va. 391, 201 S.E.2d 260 (1973). It has been explained that

> in reviewing a motion for judgment as a matter of law, a court should (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 50(a)(1), at 1108 (4th ed. 2012) (footnote omitted). Nevertheless, "[w]hen the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant." Syl. pt. 3, *Roberts v. Gale*, 149 W. Va. 166, 139 S.E.2d 272 (1964). With these standards to guide us, we turn to the issues presented on appeal.

4

### III.  ANALYSIS

In its first assignment of error, the Commission asserts that the circuit court erred in denying its pre-verdict motion for judgment as a matter of law because the Dattolis failed to present *prima facie* evidence of duty and a breach of duty in order to have the issue of liability submitted to the jury under our negligence law. The Commission explains that the Dattolis presented two theories of negligence below. The first theory dealt with the maintenance of the fence that broke and injured Mr. Dattoli. The second theory of negligence was that the Commission did not provide adequate seating in the area surrounding the site of the subject accident. As a result, Mr. Dattoli leaned against the fence which subsequently broke.

Regarding the Dattolis' allegation of negligence in maintaining the fence, the Commission contends that the Dattolis failed to adduce any evidence whatsoever of what action a reasonable park commission should take in order to maintain a split rail fence. According to the Commission, the Dattolis presented no evidence of what the Commission should have done differently in maintaining the subject fence. In other words, avers the Commission, no witness testified as to how the Commission's maintenance of the fence was improper or insufficient or what alternative maintenance should have been undertaken to ensure that the fence would not break.[2]

---

[2] The Commission also asserts that the Dattolis were required to present expert testimony in order to establish the Commission's duty to Mr. Dattoli.  We find it unnecessary to address this argument in order to properly decide this case.

5

The Dattolis counter that they presented sufficient evidence that the Commission owed them a duty regarding the maintenance of the fence, and that the Commission breached that duty. According to the Dattolis, the Commission's duty regarding the maintenance of the fence is set forth in W. Va. Code § 29-12A-4(c)(2)–(4) (1986), and they contend that they clearly established at trial that the Commission breached this duty. The Dattolis further disagree with the Commission's claim that they presented no evidence to support a finding of liability. The Dattolis point to evidence that Mr. Dattoli simply leaned against the fence post, and a portion of the fence immediately broke causing Mr. Dattoli to fall. Moreover, the Dattolis assert that the testimony of Mr. Hargleroad is more than sufficient for a finding of liability against the Commission. The Dattolis conclude that Mr. Hargleroad's testimony, taken as a whole, makes it clear that the Commission breached its duty to the Dattolis by failing to keep the fence in good repair.

---

Likewise, this Court finds it unnecessary to address the issue regarding the Dattolis' second theory of negligence below. At trial, the Dattolis claimed that the Commission did not provide adequate seating at the site of Mr. Dattoli's injury and as a result Mr. Dattoli leaned against the fence. In its petition, the Commission asserts that there was clear evidence presented at trial that there were benches located in the area. In addition, the circuit court found in its order granting the Dattolis a new trial that "there were benches in the area of the park where the plaintiff was injured." In any case, the Dattolis fail to address the issue of seating in their brief to this Court. Therefore, we will assume that the Dattolis agree with the Commission's view of the seating issue. *See* W. Va. R. App. P. 10(d) ("If the respondents' brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the issue.").

6

This Court finds that the Dattolis failed to present a prima facie case of negligence and, as a result, the circuit court erred in denying the Commission's motion for judgment as a matter of law. Our laws governing negligence claims are well-settled. This Court has explained that to prevail in a negligence suit "it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes him; (2) A negligent breach of that duty; (3) injuries received thereby, resulting proximately from the breach of that duty." *Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 118, 2 S.E.2d 898, 899 (1939) (citations omitted). We held in syllabus point 1 of *Parsley v. General Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981), "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." In other words, "[l]iability of a person for injury to another cannot be predicated on negligence unless there has been on the part of the person sought to be charged some omission or act of commission in breach of duty to the person injured." Syl. pt. 6, *Morrison v. Roush*, 110 W. Va. 398, 158 S.E. 514 (1931).

In addition, this Court has recognized that "[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner, or person." Syl. pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E. 582 (1895). Significantly,

7

> [t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syl. pt. 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988). In the instant case, the test would be whether an ordinary park commission in the petitioner's position, knowing what it knew or should have known, should have anticipated the harm of the general nature that Mr. Dattoli suffered when he leaned against the fence.

This Court previously has indicated that before an owner of land may be held liable for negligence, "he must have had actual or constructive knowledge of the defective condition which caused the injury." *Hawkins v. U.S. Sports Ass'n.*, 219 W. Va. 275, 279, 633 S.E.2d 31, 35 (2006); *accord Neely v. Belk Inc.*, 222 W. Va. 560, 571, 668 S.E.2d 189, 199 (2008). This means in the instant case that the Dattolis had to present evidence that the Commission had actual or constructive knowledge of the defect in the fence. Our review of the pleadings indicates that the Dattolis failed to present such evidence. The Dattolis cite to no evidence in the appendix that the Park Commission had actual knowledge that the fence was defective. Regarding constructive knowledge, the Dattolis cite to no evidence that the defect in the fence was obvious in nature. Actually, there is evidence to the contrary in that prior to his fall, Mr. Dattoli glanced at the fence to ensure that it was safe to lean on, and then proceeded to lean on it. Likewise, the Dattolis point to no evidence that other persons were injured by a defect in the fence prior

to Mr. Dattoli's injury so as to provide notice to the Commission of the defect. Further, the circuit court found in its order granting the Dattolis a new trial on the issue of damages that "[t]here was no evidence that the defendant had any notice that the fence was flawed or needed any repair." While the Dattolis point to Mr. Hargleroad's testimony that the fence was installed sometime between the 1970s and the 1990s, this fact alone is insufficient under our law for a jury to infer that the Commission should have been aware of a defect in the fence.[3]

---

[3] For example, in *Hovorka v. Minneapolis & St. L. Ry. Co.*, 25 N.W. 595 (Minn. 1885), the owner of two colts killed by the defendant railroad's train brought a negligence action against the railroad arguing that the fence maintained by the railroad was negligently maintained, allowing the colts to escape and be killed. The only issue in *Hovorka* was "whether there is evidence reasonably tending to show negligence on defendant's part as to maintaining the [fence] bars and keeping them in repair." *Id.* at 595. In finding that there was sufficient evidence of negligence, the court explained:

> The evidence shows that the fence, of which the bars were part, had at the time the colts were killed been built about six years; that the bars were poplar poles, "chopped on the side," of about two inches diameter at one end, and four at the other; that they were about four feet high; and that on the morning after the killing the two top poles or bars were found broken, and to be half rotten.
> Now, considering the well-known tendency of poplar poles of this kind to speedy decay; that these had been in use about six years without, as is fairly to be inferred, receiving any attention from the company; that they were, in fact, half rotten, and were found broken; and that there is nothing in the case tending to show that they were broken by any other means by the colts, it cannot be said that there was not evidence having a reasonable tendency to show negligence on the party of the company as respects its duty to maintain the fence.

*Id.* at 596.

9

The Dattolis also rely on W. Va. Code § 29-12A-4(c)(2)–(4), which provides as follows:

> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.
> (3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.
> (4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.

According to the Dattolis, this Court's decision in *Carrier v. City of Huntington*, 202 W. Va. 30, 501 S.E.2d 466 (1998), indicates that injuries occurring on public property are governed not by premises liability principles but by the specific provisions of W. Va. Code § 29-12A-4(c). The Dattolis posit that their cause of action against the Commission was statutorily created, and the statute at issue sets forth duties owed by the Commission

---

Unlike the facts in *Hovorka,* the Dattolis cite no evidence from the record regarding the type of wood of which the fence was made, the life expectancy of that type of wood, or the purpose of the fence. For example, there is no evidence regarding whether the fence was intended to support an adult's weight or whether its purpose was to mark a boundary or simply for decoration.

to the Dattolis. The Dattolis conclude that the Commission breached the statutory duty that it owed to them.[4]

This Court finds that the Dattolis' reliance on W. Va. Code § 29-12A-4(c) and *Carrier* is misplaced. The standard for liability set forth in W. Va. Code § 29-12A-4(c) is, by its plain terms, a negligence standard. In other words, for a plaintiff to prevail in a claim brought against a political subdivision under W. Va. Code § 29-12A-4(c), the plaintiff still must prove the elements of negligence. When this Court opined in *Carrier* that ordinary premises liability principles do not apply to a claim brought under W. Va. Code § 29-12A-4(c), we were referring specifically to the fact that the law imposed different duties of care on possessors of premises with regard to whether a person on private property is an invitee, licensee, or trespasser. Therefore, *Carrier* simply stands for the fact that these distinctions do not apply to claims brought against political subdivisions under W. Va. Code § 29-12A-4(c).[5] As we explained in *Carrier*, "[t]he reason for not applying premises liability principles to actions under W. Va. Code § 29-

---

[4] The parties do not dispute that the Commission is a political subdivision under W. Va. Code § 29-12A-3(c) (1986).

[5] This Court has abolished the traditional distinction between licensees and invitees in premises liability law. Specifically, in syllabus point 4 of *Mallet v. Pickens*, 206 W. Va. 145, 522 S.E.2d 436 (1999), we held:

> The common law distinction between licensees and invitees is hereby abolished; landowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances. We retain our traditional rule with regard to a trespasser, that being that a landowner or possessor need only refrain from willful or wanton injury.

11

12A-4(c)(3) . . . is that the statute[] do[es] not expressly provide for the distinctions contained in premises liability principles." 202 W. Va. at 33-34, 501 S.E.2d at 469-70 (footnote omitted).

The statute does, however, expressly provide that the traditional elements of negligence apply in actions brought for injuries incurred on the property of political subdivisions. By its plain terms, the statute requires a plaintiff bringing suit against a political subdivision for injury on its premises to prove that the injury was the result of "*negligent* performance," "*negligent* failure," and "*negligence*" of the political subdivision or its employees. This Court has held that "[i]n the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning." Syl. pt. 1, *Tug Valley v. Mingo Cty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979). The common meaning of the word "negligence" is well established in our law.

Further, we note that W. Va. Code § 29-12A-4(c) is a part of the Tort Governmental Claims and Insurance Reform Act, the purposes of which are "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." W. Va. Code § 29-12A-1 (1986). Considering these purposes, there is no basis for a finding that W. Va. Code § 29-12A-4(c) reduces a

12

plaintiff's evidentiary burden in proving the negligence of a political subdivision under the statute.

Finally, "a statute that is clear and unambiguous will be applied and not construed." Syl. pt. 1, in part, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). The statute at issue, W. Va. Code § 29-12A-4(c) clearly makes a political subdivision or its employees liable for their "*negligent* failure to keep . . . public grounds within the political subdivisions . . . in repair." It is clear from this language that a person who brings a claim against a political subdivision alleging that the injury was caused by the political subdivision's failure to keep its grounds in repair must prove that the failure resulted from negligence. Otherwise, the Legislature would have omitted the word "negligent" and simply made a political subdivision liable for injuries caused by a failure to keep its grounds in repair. Thus, it is clear under the statute that a political subdivision is liable under W. Va. Code § 29-12A-4(c), as a private person would be, for injuries to persons that are proximately caused by the political subdivision's negligence in the performance of functions enumerated in W. Va. Code § 29-12A-4(c)(2)-(4). Accordingly, we find that the Dattolis' argument that they proved the Commission's liability for Mr. Dattoli's injury under W. Va. Code § 29-12A-4(c)(2)-(4) must fail.[6]

---

[6]In its second assignment of error, the Park Commission alleges error in the circuit court's granting of the Dattolis' motion for a new trial on the issue of damages only. Because of our disposition of the Park Commission's first assignment of error, the second assignment of error is now moot.

13

### III. CONCLUSION

For the reasons set forth above, this Court concludes that the Dattolis failed to establish a prima facie case of negligence by adducing no evidence that the Park Commission knew or should have known of the defect in the fence that allegedly caused Mr. Dattoli's injury. Under our law, "[w]hen the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant." Syl. pt. 3, *Roberts v. Gale*, 149 W. Va. 166, 139 S.E.2d 272 (1964). In light of the Dattolis' failure to establish a prima facie case of negligence, we find that the circuit court erred in denying the Commission's motion for judgment as a matter of law at the close of the evidence. Therefore, we reverse the September 2, 2014, order of the Circuit Court of Ohio County that granted judgment in favor of the Dattolis and its December 3, 2014, order that granted the Dattolis a new trial on the issue of damages.

Reversed.