**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Regina A. Drew and David Drew,**
**Plaintiffs Below, Petitioners**

**vs.)  No. 20-0842** (Hampshire County 18-C-52)

**Dillons Furniture, Robert T. Dillon, and**
**Teresa L. Dillon,**
**Defendants Below, Respondents**

**MEMORANDUM DECISION**

Petitioners Regina A. Drew and David Drew, by counsel T. Lee Beeman Jr. and S. Ramani Pillai, appeal the September 10, 2020, order of the Circuit Court of Hampshire County granting summary judgment in favor of respondents on all of petitioners' claims. Respondents Dillons Furniture, Robert T. Dillon, and Teresa L. Dillon, by counsel Michael D. Dunham, filed a summary response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, petitioners filed a complaint against respondents alleging that respondents' negligence resulted in their injuries. Specifically, the complaint alleged that on December 26, 2016, petitioners traveled to Dillons Furniture, the respondent business in Romney, West Virginia. The business was owned by respondents Robert T. Dillon and Teresa Dillon. Upon arriving at the business, petitioner Regina Drew exited her vehicle, approached the front door of the business, and discovered a sign stating that the business was closed. Petitioners claimed that rocking chairs had been placed on the sidewalk at the front of the business by respondents or their agents, leaving a walking area of fewer than eighteen inches between the fronts of the chairs and the edge of the sidewalk. Petitioners further claimed that as Ms. Drew returned to her vehicle, she attempted to walk between the chairs and the edge of the sidewalk; she accidently stepped off the sidewalk onto the paved parking lot, which was several inches lower than the sidewalk; she lost her balance; and she fell on her right arm. Petitioners alleged that, as a result of the fall, Ms. Drew

1

suffered injuries to her whole body and petitioner David Drew—Ms. Drew's husband—suffered a loss of consortium. Petitioners claimed that respondents breached their duty to maintain the sidewalk in a careful and prudent manner, creating dangerous and hazardous conditions that caused Ms. Drew's injuries. Through the action, petitioners sought damages sufficient to compensate them for their alleged injuries and losses. Respondents filed an answer, denying liability.

During discovery, Ms. Drew was deposed and questioned as follows:

> Q. And as you tried to maneuver around that rocking chair, you lost your footing?
>
> A. Yes.
>
> Q. And at this time the rocking chairs would have been on your left?
>
> A. Yes.
>
> Q. And how did you -- tell me how you lost your footing. How did you fall? If you can explain that.
>
> A. Well, the rocker on the chair, it just seemed like it was sticking out a little bit further and I just went to go around it and the next thing I knew I was on the ground.
>
> Q. Did your foot catch the lip of the concrete? Did you kind of try to step, go out too far and fall off the side of the concrete?
>
> A. That I don't remember.
>
> Q. But you didn't trip over the rocking chair?
>
> A. No. I just stepped around it.
>
> Q. And you don't remember tripping over anything?
>
> A. No.
>
> Q. Just losing your footing.
>
> A. Yes.
>
> . . . .
>
> A. I'm not really sure that I fell off the sidewalk -- I don't remember falling off the sidewalk. The only thing I remember is trying to get around the rocker and the next thing I know I fell.

2

Q.      And this is the first time I'm seeing mention of uneven sidewalk. You haven't said anything about that today. Do you recall the sidewalk being uneven?

A.      No.

Q.      So there wasn't anything about the sidewalk that caused you to fall?

A.      No.

Q.      And there wasn't anything about the elevation of the sidewalk or that concrete portion that caused you to fall?

A.      No.

Q.      It was just, you fell because you attempted to walk out and around the rocking chairs and you lost your footing?

A.      Yes. Just—yes, the black [rocking chair].

. . . .

Q.      What is it that you think that Dillons' [sic] Furniture did wrong?

A.      They put the rocking chairs too close from the concrete. They should have put them back further.

Q.      But you could see the rocking chairs you've said?

A.      Yes.

Q.      And you knew the rocking chairs were there?

A.      Yes.

Q.      You even attempted to avoid one and that your attempt to maneuver around it caused you to fall?

A.      Yes.

Q.      And you could've walked back across the parking lot or taken a different path back to your car?

A.      I could have, yes.

3

Q.      And you had actually walked this exact same path from your vehicle to the front of the store?

A.      Yes.

Q.      And you didn't have any issues navigating that the first time?

A.      No.

After the completion of discovery, respondents filed a motion for summary judgment, arguing that respondents "did not owe a duty of care to [petitioner], [Ms.] Drew [], with regard to the rocking chairs she claims led to her fall because any danger posed by the rocking chairs was open, obvious, and reasonably apparent to [her]." In support of this argument, respondents referred the circuit court to Ms. Drew's deposition testimony. Respondents also argued that because Mr. Drew's loss of consortium claim was derivative of Ms. Drew's negligence claim, judgment in respondents' favor was appropriate on the loss of consortium claim as well.

Petitioners opposed respondents' motion, arguing that while Ms. Drew observed the rocking chairs, questions of fact existed as to whether she appreciated the danger posed by the rocking chairs, precluding summary judgment. Petitioners also argued that they had set forth a prima facie case of negligence because they had established that the condition of respondents' property violated International Building Code ("IBC") 1003.5,[1] International Property Maintenance Code ("IPMC") 302,[2] and American Society of Testing Materials ("ASTM") 1637-13,[3] and that these violations also constituted violations of the West Virginia Code of State Rules.[4] In making this argument, petitioners relied on a report authored by engineer Richard Hughes, which asserted that the height difference between the sidewalk and the parking lot where Ms. Drew fell was less than four inches, that short elevation changes of less than four inches should be sloped, and that "[t]he single step at [Ms. Drew's] feet in a means of egress is a violation of the IBC 1003.5, IPMC 302 and ASTM 1637-13." Mr. Hughes's report also stated, "The shielded hazard did not have sufficient color or contrast to draw Ms. Drew's primary field of view toward her peripheral. The narrowed walkway forced pedestrians to walk with one foot on and one foot off of the concrete apron." In their reply, respondents noted that Ms. Drew's testimony established that

---

[1] IBC 1003.5 provides, in part, that "[w]here changes in elevation of less than 12 inches (305 mm) exist in the means of egress, sloped surfaces shall be used." (emphasis omitted).

[2] IPMC 302 provides, in part, that "[a]ll sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions."

[3] ASTM 1637-13 sets forth various design and construction guidelines concerning walking surfaces, walking surfaces hardware, stairs, speed bumps, wheel stops, gratings, and warnings.

[4] Under West Virginia Code of State Rules § 87-4-4, the IBC and the IPMC "have the same force and effect as if set out verbatim" in the Code of State Rules.

her fall was not related to an elevation change, and therefore, any elevation difference between the sidewalk and the parking lot did not proximately cause her injuries.

Following a hearing on respondents' motion for summary judgment, the circuit court entered an order on September 10, 2020, granting the motion. On the issue of whether Ms. Drew appreciated any danger posed by the rocking chairs, the circuit court determined that petitioners' case did not involve a hidden danger and that "[a]ny danger posed by the stationary rocking chair was 'as well known' to [Ms.] Drew as it was to [respondents]." On the issue of whether petitioner had set forth a prima facie case based on a violation of the West Virginia Code of State Rules, the circuit court found that petitioners offered "no guidance on how any of the alleged violations caused [Ms.] Drew to fall." The circuit court expounded, "Although the [petitioners] assert that the condition of the sidewalk was a violation of the [International Building Code] and [International Property Maintenance Code], [Ms.] Drew specifically did not attribute the sidewalk as the cause of her fall." Based on this finding, the circuit court determined that the curb was not the proximate cause of Ms. Drew's injury. Ultimately, the circuit court concluded that there were

> no genuine issues of material fact as to the existence of the conditions at Dillons [Furniture] on December 26, 2016; that the conditions presented by the existence of the rocking chairs on the sidewalk at Dillons [Furniture] and any conditions of the sidewalk at Dillons [Furniture] were open, obvious, well known, and reasonably apparent to anyone; and that summary judgment should be granted in favor of the [respondents] as a matter of law as to all claims asserted by the [petitioners].

The circuit court granted judgment in favor of respondents on all of petitioners' claims.

Petitioners now appeal the circuit court's September 10, 2020, order. Through their two assignments of error, petitioners argue that the circuit court erred by granting summary judgment in favor of respondents because genuine issues of material fact existed "as to whether [Ms. Drew] observed and appreciated the danger posed by the conditions" and "as to the proximate cause of [Ms. Drew]'s injury." Our review of the circuit court's order is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

We have held that

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at 190, 451 S.E.2d at 756, Syl. Pt. 4. With regard to the essential elements of a negligence action, we have recognized that "[T]o prevail . . . 'it is incumbent upon the plaintiff to establish . . . three propositions: (1) A duty which the defendant owes him; (2) A negligent breach of that duty; [and] (3) injuries received thereby, resulting proximately from the breach of that duty.'" *Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 280, 787 S.E.2d 546, 551 (2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 118, 2 S.E.2d 898, 899 (1939)).

Regarding the duty of care owed by the owner of property to an invitee, we have held that "The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition." Syl. Pt. 2, *Burdette v. Burdette*, 147 W. Va. 313, 127 S.E.2d 249 (1962). However, under the open and obvious doctrine, which was legislatively established in West Virginia Code § 55-7-28,

> [a] possessor of real property, including an owner, lessee or other lawful occupant, owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.

*Id.* § 55-7-28(a). We have explained that

> [t]he duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers.

*Burdette*, 147 W. Va. at 318, 127 S.E.2d at 252 (quotations omitted).

It is petitioners' position that the danger posed by the rocking chairs was not open and obvious because Ms. Drew "did not appreciate that the significantly reduced walking area of the sidewalk, shortened by the rocking chairs on one side and the 'step-down' into the parking lot on the other side, would cause her to have to alter her gait in a way that would cause her to lo[]se her balance." Petitioners argue their case is comparable to the facts of *West Liberty University Board of Governors v. Lane*, No. 16-0942, 2018 WL 300564 (W. Va. Jan. 5, 2018) (memorandum decision), in which this Court found genuine issues of material fact precluding summary judgment in a premises liability action.

In *West Liberty*, a student at the defendant school brought a civil action against the school alleging he was injured while he and his friends were swimming in the school's pool. *Id.* at *2. At the request of the student and his friends, the lifeguard on duty had set up a portable basketball hoop at the edge of the pool. *Id.* at *1.

> The basketball hoop was four to five feet tall and about as wide. It had a square plastic base that could be filled with water. The base was composed of translucent white plastic through which one could see if the base contained water. There was little or no water in the hoop's base. There were no warnings on the hoop. The lifeguard later admitted she was not trained in how to set up the hoop, she knew the hoop was unstable without water in the base, and the hoop could tip over if touched. The lifeguard claimed she asked the men if they had used the hoop before and twice warned that the hoop could fall into the water. [The student] claim[ed] he heard neither the lifeguard's question nor her warning.

Soon thereafter, one of the swimmers dunked a basketball through the hoop causing the hoop to fall. The swimmers righted the hoop and continued their basketball game. Thereafter, another player dunked the basketball; the hoop again fell and was again reset on the pool's edge. During these "dunks," the players held onto the rim of the hoop, so that when the hoop fell, it did not land in the pool.

Minutes later, [the student] dunked the basketball and then went under the water's surface. However, as he emerged from the water, the steel rim of the falling hoop struck [his] face causing [his injuries].

*Id.*

The school filed a motion for summary judgment arguing, among other things, that the student's claims were barred by the open and obvious doctrine. *Id.* at *2. This argument was rejected by the lower court, the case proceeded to trial, and the jury returned a verdict in favor of the student. *Id.* at *2-3. The school appealed to this Court, arguing that their motion for summary judgment should have been granted because "the condition of the hoop was not concealed from [the student] and, therefore, [the student] chose to dunk a basketball with full knowledge the hoop would likely fall." *Id.* at *3. The Court disagreed with the school, reasoning as follows:

Here, the pretrial record established genuine issues of material fact, particularly as to whether the [school] failed to keep the pool in a reasonably safe condition. [The school] had actual knowledge of the hoop's dangers. Moreover, genuine issues existed regarding whether [the student]'s friends' conduct or that of the lifeguard created an open and obvious condition. In this case, [the school's] employees . . . admitted knowledge of the dangerous condition created by the hoop. In contrast, the record on appeal shows that [the student] had no prior knowledge of the hoop's danger because he had used the hoop only this one time, and only for about fifteen minutes before his injury. . . . Thus, because the dangerous condition was not "as well known to [plaintiff] as [it was] to the owner," [the school] [was] required to establish that the dangerous condition was "open, obvious, [and] reasonably apparent" to [the student].

[The school] insist[s] that, as a matter of law, the dangerous condition of the hoop was open and obvious because it was "undisputed" that the hoop fell into the water "when adult men were dunking on it." [The school] also claim[s] that because [the student] testified he saw some water in the base of the hoop, the condition of the hoop was not a hidden or latent defect. However, merely seeing water in the hoop's base did not establish that the danger was readily apparent to [the student]. Nor did [the student]'s friends' dunking of the basketball warn [the student] of any danger because, when the hoop fell previously, the friends held onto the hoop so it did not fall into the pool. Whereas, when [the student] "dunked" the ball, he did not hold onto the hoop.

*Id.* at *4.

7

Despite petitioners' contention to the contrary, the facts of *West Liberty* are not comparable to the facts of their case. Unlike the school in *West Liberty*, there is no evidence that respondents had actual knowledge of any danger posed by the rocking chairs on their property. Rather, any danger posed by the rocking chairs was as well known to Ms. Drew as to respondents and would have been as readily apparent to Ms. Drew as to respondents. Where the danger posed to the student in *West Liberty* might not have been observed by him in the exercise of ordinary care, creating a question of fact for a jury to decide, there is no evidence in the present matter indicating that Ms. Drew was unable, through the exercise of ordinary care, to observe the condition of respondents' property. In sum, because any dangers present on respondents' property were open, obvious, reasonably apparent and as well known to Ms. Drew as they were to respondents, respondents did not owe Ms. Drew a duty of care to protect her from those dangers. Consequently, no question of fact existed as to the "duty" element of petitioners' claims, and the circuit court did not commit error in granting summary judgment in favor of respondents on the claims.[5]

Petitioners have also asserted in this appeal that the circuit court erred by granting summary judgment in favor of respondents because petitioners "alleged that the [r]espondents 'violated IBC 1003.5, IPMC 302, and ASTM 1637-13, in violation of West Virginia Legislative Rules 87CSR4'" and that this allegation "was sufficiently [pled] and supported by expert witness testimony." Further, according to petitioners, the circuit court's determination that the sidewalk was not the proximate cause of Ms. Drew's injuries was not supported by the evidence.

We have held that

> "[w]hen a statute imposes a duty on a person for the protection of others, it is a public safety statute and a violation of such a statute is prima facie evidence of negligence unless the statute says otherwise. A member of a class protected by a public safety statute has a claim against anyone who violates such a statute when the violation is a proximate cause of injury to the claimant." Syllabus Point 7, *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 524 S.E.2d 688 (1999).

---

[5] On June 1, 2021, after the parties submitted their briefs in this case, we decided *Gable v. Gable*, 245 W. Va. 213, 858 S.E.2d 838, and held that "[u]nder West Virginia Code § 55-7-28(a) (2015), whether a danger was open, obvious, reasonably apparent or as well known to the person injured as it was to the owner or occupant is a question of fact." *Id.* at Syl. Pt. 13. In *Gable*, the plaintiff claimed that he was injured when he slipped on items, including a small ball, littering the defendant's steps but "hidden by the angle of the steps, paint chips, and other debris." The circuit court rejected this version of events and dismissed the plaintiff's complaint partially on the circuit court's reasoning that "[a] reasonably prudent person would have seen a golf ball on the steps . . . and exercised reasonable care in avoiding such an item." *Id.* at ___, 858 S.E.2d at 845. We reversed, explaining that it was inappropriate for the circuit court in that case to have made the factual and credibility determinations it did in a dismissal order at the 12(b)(6) stage when the case was in a posture requiring the court to take all the allegations as true. *See Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008). We find the circumstances described in *Gable* decidedly different from those here, where Ms. Drew's complaint proceeded through discovery and she plainly testified that she saw and attempted to avoid the rocking chairs, leaving no genuine issue of material fact precluding summary judgment.

Syl. Pt. 1, *Hersh v. E-T Enterprises, Ltd. P'ship*, 232 W. Va. 305, 752 S.E.2d 336 (2013), *superseded by statute on other grounds as recognized in Tug Valley Pharmacy, LLC v. All Plaintiffs Below in Mingo County*, 235 W. Va. 283, 291 n.12, 773 S.E.2d 627, 635 n.12 (2015); *see also* Syl. Pt. 1, *Anderson v. Moulder*, 183 W. Va. 77, 394 S.E.2d 61 (1990) ("Violation of a statute is *prima facie* evidence of negligence. In order to be actionable, such violation must be the proximate cause of the plaintiff's injury."); *Hersh*, 232 W. Va. at 312, 752 S.E.2d at 343 (recognizing that violations of ordinances and regulations, in addition to statutes, can also be prima facie evidence of negligence).

The Court recently applied our holding in Syllabus Point 1 of *Hersh* in *Tabit v. Kroger Group Cooperative, Inc.*, No. 18-0287, 2019 WL 517823 (W. Va. Feb. 11, 2019) (memorandum decision). In *Tabit*, a shopper at the defendants' store filed a civil complaint claiming "that she suffered damages . . . when she tripped over the abnormally large caution sign that primarily blocked ingress and egress from the bathroom leaving only the narrow route to step over and around it." *Id.* at *1 (quotation omitted). The shopper admitted "that she saw the thirty-inch tall triangular cautionary sign and walked around it prior to tripping[.]" *Id.* The defendants filed a motion for summary judgment on the shopper's claims. *Id.* The shopper argued that the Americans with Disabilities Act ("ADA") is a "safety statute"; that the defendants did not comply with the ADA by maintaining adequate signage directing customers to the location of the restrooms or by maintaining hallways of adequate structural dimensions leading to the restrooms, among other things; and that the defendants' failure to comply with the ADA was prima facie evidence of their negligence, precluding summary judgment. *Id.* at *2-*3.

The lower court granted the defendants' motion for summary judgment, concluding that the defendants owed no duty of care to the shopper because the danger posed by the cautionary sign was open and obvious. *Id.* at *1. The lower court also determined that the shopper had "failed to articulate an ADA violation proximately causing her injury[.]" *Id.* at *2. The shopper appealed the lower court's decision. *Id* at *2. In affirming the lower court's decision, the Court relied on its holding in Syllabus Point 1 of *Hersh*, determining that the shopper's "nebulous" allegation of ADA violations "f[e]ll short of instigating the proximate cause of [the shopper]'s injury: that is, her entanglement with a large and obvious cautionary sign in the common space of a public restroom." *Id.* at *3.

Petitioners' case is comparable to *Tabit*. Like the shopper's alleged ADA violations in *Tabit*, petitioners' alleged violations of a public safety regulation are, at best, nebulous, and petitioners' allegations fall short of establishing that the violations proximately caused Ms. Drew's injuries. While Mr. Hughes's report suggests that an elevation difference between the sidewalk and parking lot violated IBC 1003.5, IPMC 302, and ASTM 1637-13 and that the elevation difference contributed to Ms. Drew's fall, this opinion is flatly contradicted by Ms. Drew's sworn testimony. Ms. Drew testified that there was nothing about the elevation of the sidewalk that caused her fall. We must conclude, then, as did the circuit court, that no question of fact exists as to whether the condition of sidewalk and adjacent parking lot proximately caused Ms. Drew's fall. Accordingly, we conclude that petitioners failed to present prima facie evidence of negligence under *Hersh* that would have precluded summary judgment, and we find no error in the circuit court's decision granting summary judgment in favor of respondents.

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:** March 7, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment


**CONCURRING AND WRITING SEPARATELY:**

Justice Tim Armstead

Armstead, Justice, concurring:

I concur with the majority's conclusion affirming the circuit court's order granting summary judgment in favor of respondents. I write separately because in affirming the circuit court, the majority, in footnote five, distinguishes this case from this Court's holding in *Gable v. Gable*, 245 W. Va. 213, 858 S.E.2d 838 (2021). I believe that in both the present case and in *Gable*, the plaintiffs were required to allege facts in their respective complaints that established that the hazards they encountered were not open and obvious. In both cases, they failed to adequately do so. Therefore, while I agree with the majority's conclusion that summary judgment is appropriate in this case, I believe that petitioner's failure to allege facts that support a hazard that was in some way hidden or concealed, rather than open and obvious, was fatal to their claim from its initiation.

In *Gable*, this Court examined our open and obvious statute and held that "[u]nder West Virginia Code § 55-7-28(a) (2015), whether a danger was open, obvious, reasonably apparent or as well known to the person injured as it was to the owner or occupant is a question of fact." *Id.* at Syl. Pt. 13. I disagree with this holding.

West Virginia Code § 57-7-28(a) provides:

> (a) A possessor of real property, including an owner, lessee or other lawful occupant, owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.

10

The plain language of this statute is clear—there is no duty owed "to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant." *Id.* Therefore, to properly allege that a duty is owed,[6] a complaint asserting a negligence claim for premises liability must include sufficient facts demonstrating that the complained of hazard was not open and obvious. Because W. Va. Code § 57-7-28 clearly provides that a possessor of real property owes no duty when a hazard is open and obvious, a plaintiff should be required to set forth more than a bare legal conclusion with respect to a defendant's duty of care to satisfy Rule 8(a) of the West Virginia Rules of Civil Procedure and to survive a Rule 12(b)(6) motion to dismiss. Allowing discovery to proceed when there is only a bare legal conclusion regarding a defendant's duty of care does not comport with the plain language of W. Va. Code § 57-7-28 and improperly shifts the burden to a defendant to prove that a hazard was not hidden.

For the foregoing reasons, while I concur in the majority's conclusion that summary judgment was appropriate, I disagree with footnote five in the majority decision which reiterates, and distinguishes this case from, this Court's holding in *Gable*.

---

[6] In any negligence or tort case, a plaintiff is required to show four basic elements: duty, breach, causation, and damages. *See Carter v. Monsanto Co.*, 212 W. Va. 732, 737, 575 S.E.2d 342, 347 (2002) ("[B]efore one can recover under a tort theory of liability, he or she must prove each of the four elements of a tort: duty, breach, causation, and damages.").

11